Okay, Mr. Hankel. Mr. Johnson. May it please the Court, Your Honor. Oh, that's right. Leif Johnson, I'm for the United States. Got it, got it. Okay, go ahead. An affirmative appeal. The District Court in this case, and I will try to reserve a little time if possible, the District Court in this case suppressed evidence gathered in a traffic stop. By the way, this case is a little more complicated than it seemed and we might give you some extra time, so don't worry too much about the time. Okay. Go ahead. Thank you. The District Court here suppressed evidence gathered in a traffic stop on the Crow Reservation, remote highway in the Crow Reservation, in February, late at night, and on the grounds that the tribal officer in this case was acting without authority to detain a non-Indian person for something less than an obvious violation of law. I want to understand, I want to make sure I understand the record correctly in this case. The District Court suppressed solely on the basis of the ICRA, Indian Civil Rights Act violation, without regard to finding whether there was a Fourth Amendment violation. Right. So the essential issue in this case for me is whether the exclusionary rule applies to ICRA on that. Your Honor, in the Becerra-Garcia case, this Court described that the parameters of Fourth Amendment jurisprudence are essentially the same as ICRA on search and seizure issues. Including the exclusionary rule. Well, that's, that's... My understanding is you've conceded that. I mean, I was not entirely sure whether a case law was, but on that narrow point, and Judge Hurwitz may be something else which I'm going to get to. But keep going. But on the question of if the problem was that there was no probable cause for the search, whoever did it, you are not arguing that the, that ICRA does not include an exclusionary rule. We have not made that argument, Your Honor. So, but I'm asking a narrower question, I think. Let's assume ICRA said, for example, no tribal police officer may ever arrest anybody on the reservation except a native. I know it doesn't say that, but let's assume that it did. And a tribal police officer with lots of probable cause arrested someone. Would we, would we exclude the fruits of that search, of a consequent search, perfectly legal under the Fourth Amendment, because there was a violation of ICRA? No. Okay, now I'm trying to find the case law that makes that distinction. Well, I, I think, so, so this relates to, to our second issue, which is under Becerra-Garcia, a tribal officer acting outside of his authority under tribal law. All right, but he's, this isn't under tribal law. This is, I understand it is under, he has, he may have authority under tribal law, but the problem is that he doesn't have authority under federal law with regard to this place. So, I mean, I found your briefs really not very helpful, because you were arguing a bunch of things that don't work, like, like that, because this person, this, the problem here isn't what tribal law is. The problem here is what federal Indian law is, i.e., this guy under federal law doesn't have jurisdiction to, in some sense, over this state highway after straight, after the Supreme Court case law. And then you're arguing the old case, which was before the Supreme Court cases, as to the state highway. But we know that he doesn't have jurisdiction under the state highway broadly, although he does, apparently, to stop somebody, to find out whether he's an Indian, and to detain him on, on some standard as to whether, for, for authorized people to come. So we should stick to what the law is now, as opposed to 30 years ago. So let me, let me rephrase my question, because I... Very well. Let's assume here we have a violation of ICRA. Yes. But no violation of, but no violation of the Fourth Amendment. What case tells me that we should not suppress the fruits of the search in that circumstance? Well, I think the, the best case would be to look at the sort of extra-territorial search case that we submitted in our 28-J letter. If you look at, at Ryan, there, there was a Park Service officer who made an arrest outside of the... So he lacked, he lacked authority to do so. And he did, and there was a federal regulation... Under federal law. Under federal regulatory law, he lacked authority to make the stop, and, and yet he made the stop in the court, and, and that was the First Circuit, basically said, look, the same rules that have been applied with regard to state law and state laws are applicable in the federal context. And, and I think that is, I think that is a good case for you. I want to ask you one question about it. It involved regulations. Yes. Does it make a difference that this involves a statute decided by, implemented by Congress? In other words, Congress said, tribal officers, as a matter of federal law, not tribal law, you won't be allowed to do certain things. How do we enforce Congress's will if we don't exclude the fruits of the search? Well, we, we think that the, pursuant to the, the Schmuck decision, which the Supreme Court acknowledged in Strait, in footnote 11 of Strait, we think that the tribal officer does have authority... No, and I've asked you to assume that he didn't. I understand that your, one of your under ICRA. That he had authority to... Right. But I'm, I'm asking you to assume that it was not. Okay. Assume that we affirmed the district judge on that, the district judge's holding that this violated the Indian Civil Rights Act. Well, I... Is there no consequence for violating the Indian Civil Rights Act under, under your view in a criminal case? We think the consequence comes under the Fourth Amendment procedures. That is, there ought to be a consequence for... ICRA, ICRA itself doesn't have this limitation, right? It's, it's, as I understand it, it's judge-made law... Yes. ...with regard to the reach of, of Indian authority. Yes. All ICRA has is, is a parallel to the Fourth Amendment. Yes. And you agree that insofar as it's a parallel to the Fourth Amendment, the exclusionary rule does apply. Yes. So the real question is whether, and I still have a version of, of Judge Hurwitz's question, as I understand your basic argument, if this person, assuming that this, that this person in fact did not have authority to do what he did, there is no way to enforce that. Is that your argument? Because we know you can't bring a 1983 case or anything like it, and I don't think you can bring a habeas, so what could you do? Well, I mean, you could certainly sue the, the tribal officer under the Federal Tort Claims Act if he's acting as a, an officer under Section 638 and, and the tribe has, has law, law enforcement powers granted through a 638 contract, then... But it doesn't. ...its officers are... But there's no authority, no indication that it does. I mean, in my interest, as far as I can tell, if, and, and it struck me that the tribe here kept insisting that it had this authority, and at least in my view, it appears it doesn't, or at least it doesn't have the authority as broad as it claims to have the authority, but there seems to be no way to, to, to litigate that. Well, we think the way it's, it's litigated in any case like this has to do with reasonableness and, and I want to get back... So, so your answer is no. If the person's just the wrong person and he has no authority to do this, too bad. For the purposes of the search and seizure as to whether the evidence is usable in this case, the Fourth Amendment procedures are the protection that's afforded by the law and... So let me ask the question differently. Are you arguing that the exclusionary rule under ICRA is limited to Fourth Amendment violations? Yes. And, and if you look at the, so in Becerra-Garcia, the court cited Elkins and a number of other violations, but in those cases, the court applied a rule that we think should apply here, which is, was the search reasonable if a federal officer had conducted... And, and I want to, on that, I want to go back to, I don't understand how it is you think this stop was, and an extended stop, was reasonable in the first place. Your Honor... How did he, how did the officer have authority once he realized this was a non-Indian? Our, our, well, so those are two questions. Our, our position is that the court should have applied the, the Fourth Amendment analysis from the beginning. It didn't. It applied what was, it created this obviousness test from a roadblock case, which we think is appropriate in the roadblock scenario because... Well, except, see, that case, the, the, the distinction between a roadblock and a traffic stop, and whatever this was, a welfare stop, are important at the front end, i.e., the stopping to begin with. But I don't see why it's any different, and, and the case doesn't say it's different with regard to what the authority of the tribal officer is once you realize that it's a non-Indian. Well, I think Bresci did say it's different. I mean, Bresci set out... No, he doesn't say it's different. Where does he say that? Bresci, at page 895, set out Ortiz, Ortiz-Barraza and Schmuck as, as the rules for the ordinary case, and it distinguished the ordinary case. And it said, it said, you used the word apparent, and your argument seems to be that apparent is different than obvious, and apparent isn't different than obvious. They're both exactly the same. If you look up in Roger's Thesaurus, you will find out they mean the same thing. The court in, in, in Bresci was not intending to set a new rule for the ordinary case. It was distinguishing the ordinary case, and, by the way, the, the Bresci decision had nothing to do with the reasonableness of the stop, and that's where we get into Becerra-Garcia and, and those questions. But if we get back to the tribal authority matter, Bresci set out the, the general rule from Ortiz and, and from Schmuck, and, and the reference to Schmuck is really important here, because the overarching error in the district court's reasoning was that without the power to exclude on a public highway, that the tribe really has no power to detain someone, for anything other than an obvious violation. And number one, we have a couple problems with that. Number one, there doesn't seem to be any reason why an officer would gain jurisdiction for an obvious violation and not for something else. But more importantly, the Schmuck case dealt directly with that issue, because in that case, the highway patrol objected to the fact that the Washington tribe was, was exercising jurisdiction on a public highway, and, and the very issue came up there. But that wasn't for the relevant Supreme Court case straight, right, on that issue? Well, but on that issue, the Durrell case, the court said there's a question as to whether the court has a right to exclude. And the court said there are other powers, there are other inherent sovereign powers that give the, the tribe the right to detain on a public highway, consistent with Ortiz-Barraza, even though that case was predicated on the, on the issue of exclusion. Well, but there's no doubt, there's no doubt here that, that the tribal officer has the ability to walk up to the car and do the initial stuff. The question is whether the conditions of this case. And so, I'm not sure that those cases are helpful to me, are they? Well, so they're helpful because that is the Fourth Amendment. So the officer needs to have authority to proceed. And in this case, we think he does under Schmuck, which by the way Schmuck is a, is a Washington State case. It was a Washington State case, and it was cited with approval in footnote 11 of the straight decision. And the straight decision, which is the relevant authority on the, the ability of tribal officers to stop and, and, and detain and, and transfer on public... And no one here is, is, is questioning that either. The question is what happens after he's stopped and detained him, and then found out he was a non-Indian? What then? And you, throughout your brief, are arguing that there is then a right to investigate, and I don't know where you're getting that from. So, so our, our, our, well, I'm getting that from Ortiz-Barraza, which, which was the, the, without the authority to investigate... It would be if it wasn't on a state highway, but it is on a state highway. Well, and it was in Ortiz-Barraza as well, and in Schmuck. Yes, and they were wrong about, the one thing that Ortiz-Barraza we know is wrong about is that it doesn't, that the fact that it's a state highway doesn't affect the authority in general of the tribe over that part of the reservation, and that we know is wrong. Well, we don't know that's wrong, because Schmuck dealt with that. As I was saying, that's the issue here, and that the, that the, the power, even though it was, it was predicated on power to exclude in Ortiz-Barraza, really, really included other inherent sovereign powers that the court, that the Supreme Court acknowledged is straight with footnote 11. So that's our point here. Let me ask you one, go back to where we started. Yes. All right. Let's assume you're wrong about all of that, but, I mean, i.e., that in fact the, the, the district judge applied the right standard with regard to the authority of this tribal officer. The question remains whether that gets the defendant to the exclusionary rule, i.e., is that a Fourth Amendment violation or something else? Yes. And if it's something else, is it enforceable at all, and if so, how? Well, so as to the Fourth Amendment issue, we think that the, the tribal authority issue isn't a per se sign that the, the ultimate search was unreasonable. And that's what the court said. And the district court never reached that? It never reached that, and it should have reached that question. I mean, the district court should have actually, at the time of detention, made the, made the, the finding as to whether or not that was the case. So, so, so we think that the authority issue in, in, in any case is, is simply one factor of many that could be considered in, in the overall reasonable misconcept. Can we go back to the question Judge Berzon asked, and I think I asked too? Yeah. Let's assume you have a, a violation of ICRA. Let's assume that there, you, you, I think you can see there are some things a tribal officer can't do on a, on the reservation that a, another officer might be able to do. Can't charge, and he can't. Okay. And can't commit. Fair, fair enough. So I don't, I don't want to get in a fight about what the violation is. Let's assume a tribal officer has acted in excess of his authority, but he would not have been violating the Fourth Amendment. Right. But his, well, what he does does not violate the Fourth Amendment. Yes. You're saying the only remedy for that is a, is a tort, is a Federal Tort Act claim against the tribal officer? Well, I mean, there may be other remedies. I, you know, there, there is no private cause of action against the tribe because of sovereign immunity, and, and obviously Bresci. I don't understand your Federal Tort Claims argument. There isn't one. Well, so if there is a 638 contract, the government. We're assuming there isn't one. If there were one, we wouldn't be having this whole problem. We don't know. I said he'd be a Federal officer. We certainly don't know. I mean, we don't know. Well, if we don't know, then maybe we should know because we don't need to be here if he's a Federal officer. He was not a Federal officer. All right. So he wasn't, wasn't authorized by the Federal government to do what he did. It isn't part of the record that this officer was acting under some sort of. I'm not sure why you're. 638 contract, which would make him liable under the Federal Tort Claims. Right, but we don't have one of those. That's a separate issue. We don't need to deal with that issue. I'm not sure why you're sort of scared of saying, no, there may not be a remedy, just like there may not be a remedy. There very well may not be. There may not be a remedy under State law for violations of State authority. There very well may not be a private remedy for an outrageous Fourth Amendment search under these conditions. But there's always the remedy of the Fourth Amendment. Now you've changed my hypothetical. I just want to be clear. That's what we do. We've got a violation of Federal law that doesn't violate the Fourth Amendment. And your position is, I think, at the end of the day, well you don't get the evidence excluded and there's probably no remedy for it. Our position is we're dealing with evidence that was gathered in that case. And the issue in this case, the sole issue, is not sort of what remedy the defendant has for an outrageous search. It's whether the evidence can be used in this case. It can be used in this case because the search was otherwise reasonable under the Fourth Amendment. And just one last point, and then you're way over your time, although I told you that you could do that. I assume you would agree that if we were to reverse what the district court did, we didn't go back and start with Stage 1, which is whether there was a Fourth Amendment violation. No one ever actually decided whether if this were an otherwise authorized person this would be valid, right? It needs to be remanded so that the court can make that determination. All right. Thank you very much. Thank you. May it please the Court, good morning. My name is Eric Hinkle and I'm appearing on behalf of Mr. Cooley. Judge Waters' decision in this case was both legally and factually correct and it should be affirmed. So cite for me any case in which we've applied the exclusionary rule in the absence of a Fourth Amendment violation where there was only an ICRA violation. Can I just interrupt for a minute? Is there an ICRA violation if it's not a Fourth Amendment violation? Is there an ICRA? There is an ICRA violation, yes. Because? Because ICRA says that applies the prohibition against unreasonable searches and seizures to the tribe. All right. Okay. So stop for a second. I phrased this incorrectly. Okay. Let's assume that the tribal officer did not have the authority to conduct the search, but that had he been a Federal officer or a State officer, the search would not have violated it. He could have done so and the search would not have violated the Fourth Amendment under any circumstance. Is there any case where we've suppressed the fruits of a search solely because the tribal officer exceeded his authority? None that I'm aware of, Your Honor, but that is not what the government is arguing here. Well, but it's what I'm asking. Because here's the problem. The district judge, maybe quite correctly, said the officer exceeded the scope of his authority because of the interplay between Federal Indian law and other law. But the district judge never said the officer violated the Fourth Amendment. And so my question is, under that circumstance, what case tells us we can exclude the evidence? The fact that it was still an unreasonable seizure. I'm asking you about a case. I'm asking you, is there any? And I'm not aware of any. Okay. But you're saying it's unreasonable because you didn't have authority. Is that what you're saying? Yes. That's right. You're also saying, or you will say if you have to go back to the district court, that it was unreasonable anyway. Yes. But let's leave that aside for now. Right. Okay. What about Virginia v. Morris and that line of authority with regards to, which isn't anywhere in the briefs, but which basically says that the fact that, for example, you're going to have to go back to the district court, you're going to have to go back to  Morris and say, never mind with regard to the Fourth Amendment. Yeah. Those are the line of cases cited by the government about the lack of authority. Well, they're a little different. And I don't know that they ever cited Virginia v. Morris. But they have to do with whether a violation of state law, and it's not really about the authority of the officer, but rather the fact, well, in a way it is. Because state law said you couldn't arrest somebody for this and for what they arrested him for. And the Supreme Court said, well, that's no never mind. The question is whether it's a violation of the Fourth Amendment to arrest him for that. And it isn't. Right. And in that case, that case sounds similar to the cases relied upon by the government here, which is these cases where there is a, for Sarah Garcia, for example, and the First Circuit decision, U.S. v. Ryan, that they filed their supplemental authority about last week. In both of those cases, you had a federal actor. And for Sarah Garcia, the court expressly found that the tribal rangers in that case were acting at the direction of the U.S. Border Patrol. And so they found state action in that case. In Ryan, it was a federal national park officer who had the, it was not disputed in that case that he had the authority to detain and investigate. But not, but not off, not off the board. No, no. In Ryan, if you read Ryan, he did. There was a statute that expressly gave them. So, but I want to get back to the question that both of us have been trying to ask. And make it a state law. Lots of state law that says, have a state law that says constables may only arrest people for misdemeanors. And a constable arrests somebody for a felony and then conducts a search. Would we suppress the fruits of that search because he violated state law? If you found that it was unreasonable, yes. No, just solely because it violated state law, not because it violated the Fourth Amendment. Or put it differently. Is it unreasonable simply because it violates state law? Virginia versus Moore seems to say no. I don't believe not simply because of the violation of state law. No. So at the end of the day here, don't we have to find an unreasonable seizure or in search, which is to say a Fourth Amendment violation before we can suppress. Yeah. But that, that, that's where Bressie comes in. If, if ultimately a stop by a tribal officer of a non-Indian on a state highway, if all you needed to justify that stop was the objective, objectively reasonable suspicion that we traditionally apply, that's what the court in Bressie would have said. But instead it applied this obviousness standard and articulated that rule when it comes. I mean, Bressie was a funny context because you didn't have this non-enforceability problem because if he wasn't a federal officer, as tribal officer, he was a state officer. Right? And so they were just trying to figure out whether he was a operating under tribal authority or under state authority. And he ultimately said, well, they had to be operating under state authority because he couldn't operate under tribal authority. But see the state certification issue in Bressie, I think is what makes it so telling and instructive in this case, because in that case, this court had to articulate the and discuss this law and the line and determine, they had to look at the sequence of events to determine which actions the officers were authorized to take under purely tribal law. And ultimately they had to do that in order to determine whether Bressie had stated a viable 1983 claim. Okay, but it's very informative on the substantive standard, but it isn't very informative on the remedy standard. Right. When, you know, it seems to me that what Bressie implies is that it's the Fourth Amendment standard that controls the section 1983 claim. Right. I don't, I don't think Bressie. It's a 1983 claim. Right. And the question is, can you make a 1983 claim? And the court says, well, you can in this case because they were operating under color of state law. Right. And Bressie says, once you do that, then we look under 1983 to see whether there's a constitutional violation. Right. And so I'm not sure how Bressie helps you when we don't have a constitutional violation. Bressie helps because again, if the, if a tribal officer had the authority to detain and transport based upon reasonable suspicion, they would have stated Bressie would have stated that, but they didn't. You understand what's bothering. I do. It's not where I, I at least am willing to assume that the district judge, I mean, unlike what the government says was quite right about this obviousness standard applying here and that Bressie and that the, the roadblocks part of Bressie is, is, is a, you know, sort of artifact, but it isn't the, the standard, the substantive standard you're right. Let's assume that you're right about the substantive standard and that the district judge was right about the substantive standard. I understand that the government has not until now and not even that much now really joined issue on the question of then what, but then what? Well, and that's important because the government has not argued that the exclusionary rule doesn't apply. Well, the government had look, the district court suppressed in this case solely on the basis of what it thought was an excess of authority issue, right? Right. What if the district and what if the district court was right? You're saying the government has waived a fourth amendment argument. It certainly made one below. And the district court declined to get to it. It did. The government has not argued that the district court aired because it applied the exclusionary rule that they're arguing that the fact that a particular officer may lack authority does not amount to a purse say unreasonable seizure. Well, that's, it's really the same argument. No, isn't it? It goes to the reasonableness of the detention. But you, something other than the fourth amendment and the government's argument throughout has been that reasonableness is measured against the fourth amendment standard. No, I think what I'm arguing, what I'm arguing is that an unreasonable detention is what this court says in this context is what this court said. It wasn't Bresci, which is a detention for something other than an obvious violation of state or federal law. That's unreasonable. Put, put Bresci aside. Cause I don't think it gets you where you need to go. I just want to understand your position. Your position is that you want, we can have an unreasonable detention that requires suppression of resulting evidence that's, that's seized and that unreasonable is measured against the authority of the officer to engage in the detention, not the traditional fourth amendment standard. It, well, I think that, no, that's not my position. I don't think technically, it has to be your position. What else could be here? Well, I guess I didn't quite understand exactly what you were getting at. You're basically feeding the, you have to be feeding the lack of authority into the reasonableness standard. Yeah. Yes. That's right. Right. Definitely. And so there are two questions about that. One is given Ryan and Virginia versus Moore, is there any authority for that? And two, well, two is in that regard, doesn't matter that this is that the rule that's being enforced here is, is sort of a, you know, it's a quasi jurisdictional rule or a it's a federal rule. First of all, it's not state law as in Mars and it's a federal rule that has, you know, some depth in terms of separating out federal and tribal jurisdictions. So maybe it's an important enough rule that, that it ought to be feeding into the, for, I mean, you're not really explaining to us with an argument of principle, why this, this particular kind of lack of authority should be feeding into the fourth amendment when we know that others don't. Well, I think your honor, it goes to what you said. Then there, if the evidence of this detention is not suppressed and excluded from trial, then there is literally no remedy for, for the violation. But the exclusionary rule, the Supreme court tells us is an extraordinary remedy to be imposed for constitutional violations. You're in effect asking us to impose it for a statutory violation, not, not a state. There's no statute involved. Well, if there's no statute, then it's even worse. Well, or war is, is the, the federal Indian law underlying this of constitutional dimension, essentially. I, the, the fact that tribes that the division of authority between the federal government and, and Indians with regard to the authority over non-Indians, is that, you know, of sufficient and special authority somehow. I don't, the fourth amendment doesn't strictly apply because we're dealing with bringing it into ICRA, the ICRA parallel to the fourth amendment. Well, I mean, ICRA issues are often analyzed through the traditional fourth amendment lens of reasonableness. And that's what was done here. It's just what is reasonable versus what is unreasonable. Look, if let's, let's suppose somebody is driving across the state line in New Jersey and a New Jersey state parole officer follows him into Delaware. I don't know if Delaware and New Jersey may meet each other. I think they do. And, and, and, and, and, and stops him in, in Delaware. Is that a fourth amendment violation? Well, that sort of goes to state v. Erickson, which is a Washington Supreme court case from 2011, which is different from schmuck, but that was sort of the issue was the reverse there where you had a tribal officer chasing a non-Indian from on the reservation off the reservation. And ultimately they, I mean, I, I don't believe they specifically discuss the exclusionary rule within the context of that case, but they affirm or they reversed a lower court's denial of a motion to suppress in that case. Let me try a little different, this a little differently. ICHRA itself, as it says, you know, if you, it's got an exclusionary rule in it, right? Yeah. Yes. Okay. Is the exclusionary rule in ICHRA limited to fourth amendment violations? No, it's, it's where the rest of the language of the, of that section seems to match, seems to say what we want to do is apply the fourth amendment on Indian reservations. The exclusionary rule in ICHRA, the exclusionary rule says that we exclude the fruits of an unreasonable search or seizure. Where is that? Now, it doesn't say that in ICHRA. I thought we were talking about just what does the exclusionary rule say? So it doesn't say that. Right. But, but we have Kate, but to the extent we're going to exclude stuff under ICHRA, since you think there's an exclusionary rule under ICHRA, why does it go broader than the language of 1302, which talks about, which has really a fourth amendment standard? Why, why would we read an exclusionary rule into ICHRA broader than the broader than the language of 1302? Or, I mean the exclusionary rule, we, we apply the exclusionary rule to the exact same language that we find in the fourth amendment. I understand your argument to be that we're not going beyond ICHRA. We are saying that it's an unreasonable search and seizure for somebody who doesn't have the authority to search you to search you. That's not technically what I'm arguing, because Bresci says they have the authority, but the authority is only there when there's an obvious violation. No, under the rugs, without meeting the Bresci standard. Right. If somebody who doesn't have the authority under the Bresci standard to keep you there, keeps you there and, and, and investigates, doesn't just detain you, then you were saying that that's unreasonable. Yes, that's what Judge Waters tells me. So that's your, so that's your hook. Yes. And the question is, how do you get there? And where does that come from? I mean, there's something somewhat satisfying about it. I mean, how could it be reasonable for, if I decided to stop this guy in the street and, and, and search him, presumably it would be unreasonable because I don't have any authority to do it. And I mean, that's your basic argument. Well, the lack of. This is just a nobody who's doing this. It's not, it's not Fourth Amendment unreasonable. It's just unreasonable. Is that what you're saying? No, it's Fourth Amendment unreasonable. The lack of authority comes from the unreasonableness of the stop. I think there's two different types of lack of authority. You have the true, the, the, the pure lack of authority when somebody is out, outside of their territorial jurisdiction in a place where they cannot act. But then you have the other scenario where they have authority within, where they're at, but they exceed that authority. So they lack. But your basic argument, as I understand it, is that it is unreasonable for somebody who has no authority to search and seizure to search and seizure. That's an unreasonable search. Unless there's an op, well, search. Well, Bressie tells us that they can't. Yeah. That's my argument. Right. Even though if this person had been a state or federal officer, we would then only analyze the search under the Fourth Amendment. That's right. Substantively, as opposed to in terms of who's doing it. Yes. So that's our basic problem is what is the authority for the position that if the wrong person searches you, you have an unreasonable search under the Fourth Amendment and therefore under your credit. And again, that is not the issue raised by the government's appeal here. Why? Because they're not arguing that the exclusionary rule does not apply. They've never said that. They've never argued it. It's about the substantive Fourth Amendment violation. I understand that they're arguing a bunch of other things, which are probably wrong, but you think they're not arguing that a person without authority searching you is not a Fourth Amendment violation? They're saying it doesn't amount to a per se Fourth Amendment violation. I think that's what they're arguing. I think you're correct in saying their argument doesn't squarely meet this, but I do think they're arguing that the judge erred because the search didn't violate the Fourth Amendment. Yeah. Yeah. If you set aside the obviousness standard and you just want to analyze this based upon reasonable suspicion, yeah, I think that's what they're arguing. Let me just ask you one last question before you go home, because you're now over time. You also agree, I assume, that there would be a remand if we didn't agree with this, right? Didn't agree with the? With this little piece that we're worried about, i.e., how does the lack of authority feed into the Fourth Amendment violation? And I understand you think we shouldn't be reaching that because the government really isn't arguing that. I understand that much, and I think that's arguable. But nobody has ever decided substantively whether this was, if this person had authority, was this a valid search? Substantively? No, I disagree. Judge Waters decided it substantively because she found that it was an unreasonable seizure. So she analyzed the reasonableness of it. All right. Suppose we thought it didn't matter who this person was. Okay. Suppose we thought that it should be analyzed the same as if he were a state officer or a federal officer. You would still, I assume, argue vigorously that there was, this went beyond the substance of a valid detention and search. If the reasonable suspicion standard applied? Reasonable suspicion. The standard that would apply. Slash probable cause at some point. No, I think you should still affirm, Judge Waters, because the record is clear that. Well, I'm asking you, so you think we should do that and not send it back? Yeah, as an alternative. Yeah. Yeah. As a separate grounds for affirming. Yes. Yes. Thank you very much. Thank you. I'll give you one minute. Thank you, Your Honor. Our point with Bressie is that the context really does matter. The obviousness standard is, is related to the Edmund decision and the limitations on using. I disagree with you. Do you win or lose? We still, we win in the sense that this case needs to be remanded so that the court can consider. If we disagree with you, if we disagree with you about the reach of Bressie, why don't you win or lose? What we still, we still win. Okay. Applied the right substantive standard. We still win because number one, the authority issue itself is not determinative as we, as judge Hurwitz was discussing. The issue becomes then was this violation of ICHRA, which is a statute. Was it still, was it reasonable under the meaning of the fourth amendment? As of course, cases have interpreted it. And you think authority never matters. No authority. It can be factored in to the reasonableness equation, right? It is a factor to be considered. And for it actually in, in the Ford case that we cited, it actually discusses that a little bit. It says, look just because he's 10 feet outside of the reservation or the, the park in that case, doesn't make it per se unreasonable. Now it may be a factor to be considered. Let's say the tribal officer here drives 150 miles away to another town and arrest somebody. In that case, the, the officer's authority would certainly be a factor for you to consider in the reasonableness. Even if the fourth amendment were otherwise violated, otherwise satisfied. Even if the fourth amendment were otherwise satisfied, I think that could be factored into the reasonableness equation. And I don't think the case law forecloses that. What Becerra Garcia says is it's not a per se fourth amendment violation, but to get to your question, judge Hurwitz, I don't think it's that it's difficult for us to make the, the argument that if ICRA is, is reviewed under the fourth amendment, the case law and standards, and these are all judge made standards exclusion being primary among them, that they come in a package and apply to ICRA. That is an unreasonable search under ICRA. A statute is remedied by the package that this court was asking a slightly different question, which is 1302 in ICRA talks about constitutional rights. And so we might well say that a violation of 1302 in ICRA requires exclusion because it matches up with a constitution, but they're not all other violations of ICRA, if you will, authority violations require exclusion. And I was trying to figure out where the line is. And that would be the line because ICRA isn't the entire bill of rights package. The, the thing about ICRA is it contains some of the bill of rights. You know, you don't have a right to counsel for instance, but you do have a right to be apprised of your charge and arraigned on a charge. So the fourth amendment, the fourth amendment package comes with ICRA. That's essentially what the court said in Becerra Garcia. And that means that that exclusion remedy applies, but it applies under the same circumstances that is reasonableness. And if you want to consider authority, it's only one factor to be considered in this larger reasonableness package. And Bressie did not reach that question. Bressie did not. Thank you very much. Thank you. Thank you both. It's an interesting and difficult case. You were both helpful. United States versus Cooley is submitted. And just for planning purposes after the next case, we'll take a short break.
judges: Thacker, Berzon, Hurwitz